MANNING A. BRUCE

*v.*

MARIA J. DOOLITTLE *et al.*

81  103
23a  72

81  103
29a  442

81  103
140  606
40a  178

81  103
50a  203

81  103
178  167

81  103
182  409

81  103
97a  1308

1. LIMITATIONS—*must be pleaded.* If a party desires to set up the bar of the Statute of Limitations as a defense, he must plead the same.

2. SAME—*does not apply to citation to account.* A citation to require a guardian to account, is not an action either at law or in equity, within the meaning of the Statute of Limitations.

3. GUARDIAN—*power of court to require an account.* The statute confers express power on county courts to compel guardians to render their accounts upon oath, and to require additional security when necessary, and in default thereof to remove them.

4. SAME—*account approved, not conclusive.* Although a guardian's account may have been approved by the county court, he may, afterwards, be charged with moneys received by him which he failed to charge in his account, or if he charged himself with too small an amount, the wards may have the account correctly stated.

5. SAME—*settlement with wards.* A settlement by a guardian, made with his ward, upon the basis of an erroneous report made by him to the court, is not conclusive on the ward, nor is a receipt given for the balance shown by such report to be due the ward, when it is given under the assurance, if anything else is found to be due it shall not stand in the way.

6. JUDGMENT—*in vacation.* It is error to enter judgment in a case in vacation, where the court adjourns for the term after hearing the evidence, without the consent of the parties.

Appeal from the Circuit Court of Scott county; the Hon. Cyrus Epler, Judge, presiding.

Messrs. Beason & Blinn, for the appellant.

Mr. James M. Epler, and Mr. Wm. W. Berry, for the appellees.

Mr. Justice Craig delivered the opinion of the Court:

This was a proceeding, instituted in the county court of Scott county, to compel Manning A. Bruce, who had been appointed guardian, in 1848, of Maria J., Elvira L. and James W. Campbell, to render an account and make final report of his guardianship.

The guardian, who is appellant here, was brought in by citation, issued and served under the provision of the statute enacted for that purpose.

In the county court an order was entered, requiring appellant to account, as guardian, for certain moneys in his hands belonging to his wards, from which he appealed to the circuit court, where a trial was had before the court, and the court found, from the evidence, that appellant had in his hands $3735.09 belonging to his wards. The court, thereupon, entered an order requiring appellant to pay over to Maria J. Doolittle $1395.04, and to Elvira L. Cackley $1395.04, and to the heirs of James W. Campbell $945. To reverse the order of the circuit court, this appeal has been taken.

It is first urged, that an action is barred on the guardian's bond by the Statute of Limitations, and appellant could not, therefore, be required to render an account on citation issued by the county court.

So far as appears from the record, the Statute of Limitations was not set up or relied upon by appellant in the county court, where the proceedings were commenced, or in the circuit court, where the order appealed from was entered. But, even if the statute had been set up, it would have been no bar to this proceeding. This proceeding, by citation, to require a guardian

to account, is not an action either at law or in equity, within the meaning of the statute, in bar of which the Statute of Limitations can be pleaded.   *Gilbert* v. *Guptill*, 34 Ill. 112.

The main object of the proceeding is, to determine the amount of money in the hands of the guardian due the wards, and require an account.   The statute confers express power on county courts to compel guardians to render their accounts upon oath, touching their guardianship, and also authority to require guardians to give additional security, when necessary, and in default thereof, power of removal.

At the time the citation was issued, in 1872, the bond executed by the guardian and his sureties was in force.   The guardian had rendered no final report of his doings as such, and the county court not only had the power to require an account, but it was a duty resting upon it to take action in the matter.

It appears, from the record, that the appellant rendered an account to the county court, in 1851, which showed a balance in his hands belonging to his wards, and although efforts were made by the county court after that time to compel a further account and settlement by citation, they proved unavailing, and appellant was not brought before the court until 1872.

It is claimed by appellant, that the account rendered in 1851 is final between the guardian and the wards, and that the circuit court, in stating the account, could not go behind that account, or in any manner reopen it for further adjudication.

While the approval of the guardian's account by the court in 1851 was a judicial act, yet, if the guardian had received moneys which he failed to account for, or charged himself with too small an amount, no reason is perceived why the wards may not require the account to be correctly stated and the guardian properly charged.   *Bond* v. *Lockwood*, 33 Ill. 215.

Prior to the rendition of the account in 1851, the guardian had sold real estate belonging to the wards, under decree of the circuit court, for the purpose of raising money for their education and support.   In 1850 he filed a report of sale, under oath, to the court, from which it appears the lands sold for

$2200. Notwithstanding this fact, only a short time afterwards he rendered an account in the probate court, in which he charged himself with $2002, as the amount for which the real estate sold. But, not satisfied with this concealment of money that belonged to his wards, he also reported that $667.33 of the proceeds of the sale of real estate belonged to his wife, during her lifetime, as widow of the father of the wards. This, too, was done when the records of the circuit court showed that the widow's dower had been assigned in the lands previous to the time he had made sale of the wards' interest. The effect of this would be to deprive the wards, whose interest he had sworn to protect, of the interest which would accrue from year to year on a large portion of their estate, and place it in his own pocket.

The circuit court did not, however, reopen the account which had been approved, but merely, on the evidence, required the guardian to charge himself with that portion of the proceeds of the sale of the lands which he had concealed from the probate court in his report, and also required him to account for interest on the $667.33 which he had attempted, in defiance of his duty and the requirements of law, to appropriate to his wife.

There was one other item, rent of the farm from 1846 to 1848; the guardian had charged himself with but $100, while the proof showed the rent to be worth a much larger sum. The court, from the evidence, required the guardian to account for $160 rent he had never accounted for or charged to himself.

The account of the guardian rendered in 1851, which was the last report made, was not disturbed, but left in full force; but, in addition to the account then rendered, the guardian was required to charge himself with the three items alluded to, which he had received as guardian and had never reported to the court.

We are satisfied, from the evidence, the court was fully justified in the conclusions reached. Indeed, from the evidence, the court would have been warranted in requiring the guardian to account for a much larger sum.

James W. Campbell, the father of these wards, died seized of a good farm, besides a large amount of personal property. The appellant married his widow, and became guardian of his children. Under his management the property has been squandered, and the children have received little or no education. And while the law required the appellant, as guardian, to render an account to the probate court each year, and when the wards became of age pay over to them the amount in his hands, this duty was ignored, no report made after 1851, and the money belonging to the wards has been squandered or used by appellant in his own business. This conduct of the guardian has no sanction in the law, and had the probate court properly discharged its duty he would have been removed years ago for disregard of duty, and his sureties sued on his official bond.

It is, however, claimed by appellant, that he has settled with the wards, and nothing was due them at the time the court made the order.

It appears, from the evidence, that in 1853 Maria J. Campbell was married to Mr. Doolittle. No formal settlement was made with her. She resided with appellant some years after she was of age, and received her board and clothes, but it is a fair inference, from the evidence, that her labor was worth all she received.

James W. Campbell died in 1861. Prior to this event, appellant claims to have settled with him, but all he received was a horse, bridle and saddle, valued at $200, and the settlement was based on the erroneous report of 1851. The court allowed appellant what he had paid to this ward, and charged him for the balance due, which, under the evidence, was proper.

Elvira L. Campbell married Cackley in 1863. In 1871 appellant obtained a receipt of her, but the evidence shows that the receipt was obtained on the representation that there was but $60 going to her, and that on a settlement appellant was then making in answer to a citation in Mason county; that if it turned out that any further sum was due, the receipt should not stand in the way. Under such circumstances, the receipt

given by Mrs. Cackley can not be regarded as conclusive upon her.

Upon a careful examination of the evidence, we are satisfied that the facts found by the court were fully authorized by the testimony, and that the order entered was proper. But after the court had heard the evidence, the court adjourned for the term, and the judgment of the court was entered in vacation. Appellant was not present nor did he consent.

The rendition of the judgment in vacation was error, for which the judgment must be reversed and the cause remanded. The court is, however, directed to enter the judgment when court again convenes.

*Judgment reversed.*