THOMAS J. SUTHERLAND

*v.*

SELAH REEVE.

*Filed at Ottawa, March 31, 1894.—Rehearing denied, October Term, 1894.*

1. ATTORNEY—*purchase of matter in litigation.* A solicitor can not secretly purchase the subject-matter in litigation, or any interest therein, and hold the same adversely to his client. Such a purchase is voidable as to his client.

2. If he does so purchase, he will be held to be a trustee for his client as to the property or interest so purchased. The purchase of the subject-matter of litigation is forbidden as against public policy, and because it places the solicitor under temptation to be unfaithful to his trust.

3. SAME—*procuring a decree for himself on his client's claim.* Where an attorney, without notice to his client, procured an order or judgment that the claim in litigation belonged to the attorney, and that the suit proceed for the benefit of the latter, it was held the decree or order finding the attorney to be the sole owner of the claim, was improperly and fraudulently entered.

4. TRUST AND TRUSTEE—*defenses by beneficiary.* In a court of equity, a *cestui que use* may avail himself of all the defenses of which the trustee could.

5. CHOSE IN ACTION—*purchase—title acquired.* A purchaser of a claim, which is not negotiable, can only acquire such interest as the vendor has. He will take the claim subject to the equities between the vendor and a third person claiming the equitable title.

6. Not only does any purchaser of a *chose* in action take it subject to all equities of the original parties thereto, but a second or subsequent assignee takes it subject to all equities existing between any prior assignor and assignee.

7. FRAUD—*concealment of material facts by a purchaser.* An attorney concealed material facts respecting his client's claim, and thereby obtained an assignment of the claim, which, if known to the assignor, he would not have obtained: *Held,* that concealment, under the circumstances, vitiated the assignment as much as misrepresentation or actual fraud.

8. LIMITATION—*in equity—bill to set aside fraudulent judgment.* The statute of limitations is applied in equity only by analogy to the limitations at law, and a court of equity will not apply the statute when it would be inequitable to do so. The limitation of five years will not be applied to a bill to set aside an order obtained by fraud, while the original cause is still pending.

9. LACHES—*ignorance of the material facts.* The defense of *laches,* by reason of lapse of time and inaction of the party seeking relief, will not be permitted where the party was in ignorance of the material facts connected with the transaction which is attacked, or of his rights in relation thereto.

APPEAL from the Appellate Court for the First District; —heard in that court on writ of error to the Circuit Court of Cook County, the Hon. M. F. TULEY, Judge, presiding.

Messrs. SAWIN & VANDERPLOEG, Mr. THOS. J. SUTHERLAND, Mr. A. MOSES and Mr. WM. BLACK, for the appellant.

25—151 ILL.

Mr. GEORGE R. GRANT and Mr. CHARLES E. POPE, for the appellee.

This cause was heard before the Honorable Murray F. Tuley, Chancellor, who rendered the following opinion :

"The bill alleges, that about February, 1874, he (Reeve) retained Sutherland as his solicitor, to attend to and collect the claim of Reeve against the Great Western Telegraph Company, for a reasonable compensation, to be paid out of the proceeds of the claim when collected, and that up to the filing of the petition in this case Sutherland continued to be his solicitor in said matter. That in 1876, David A. Gage, who it appears was a friend of Reeve and had been president of the Telegraph Company, came to Reeve, and stated that there was a move to sell the Great Western Telegraph Company to the Western Union, and requested Reeve to assign his claim to him (Gage) so that he could show that he had a right to control the same, and thereby the sale of the lines of the Great Western Telegraph Company to the Western Union could be accomplished, in which event Reeve would get the money on his claim. If no sale could be made, he (Gage) would return the assignment to him (said Reeve). That he (Reeve) thereupon made a written assignment to Gage of his said claim; that no sale was made to the Western Union, but Gage did not return the assignment to Reeve. That in 1879 Sutherland went to Denver where Gage had been living for a number of years, and obtained the assignment of the claim to himself, upon the representation that he was the attorney of Reeve, and upon the false representation that Reeve had authorized him to take and receive from Gage an assignment of the said claim. That thereupon, and on the 7th of August, 1879, Sutherland appeared in court in the *Terwilliger case* and moved the court that the accounting by and between Reeve and the Great Western Telegraph Company, then pending, be henceforth carried on

and be prosecuted on the part of said Reeve for the use and benefit of himself (Sutherland), which motion was signed: 'Thos. J. Sutherland, solicitor of record for Selah Reeve, and the owner of the claim of Selah Reeve against the Gt. West. Tel. Co.' That the court thereupon entered an order to the effect that Sutherland was the owner of the claim, and that the same be prosecuted for his use and benefit. That no notice was given Reeve of the filing of the motion, the pendency thereof, or of the order therein. That on September 29, 1879, a decree was entered in the *Terwilliger case* on the report of the master, to whom the case was referred to take proof as to the claim of said Reeve, finding and decreeing a claim in favor of Reeve for $154,861.25.

"The bill alleges that visible property of the company was sold by the order of this court in 1880, for the sum of $15,000, which petitioner supposed from information derived from Sutherland exhausted all property and assets of the corporation liable for the payment of its debts and the costs of the court proceeding.

"That there was, in fact, an unpaid stock liability to an amount more than sufficient to pay in full petitioner's claim, which fact it is alleged Sutherland studiously concealed from Reeve.

"That Reeve did not learn of the action of the court in adjudicating the ownership of his claim to Sutherland, nor of the assignment by Gage to Sutherland of his claim, until February, 1888.

"The prayer of the bill is to impeach and to have set aside the order which finds Sutherland to be the owner of the Reeve claim, and that it be prosecuted for his benefit, and also, so much of the decree of September 29, 1879, as finds and decrees to the same effect, and that the proceeds of the claim be paid to Sutherland, also for general relief. An answer under oath is not waived.

"An answer under oath was required, and was filed by Sutherland. It has been twice or more amended, and one of the amendments put in without being sworn to. It is a serious question whether that does not make the entire answer as of no more value than if it was not an answer under oath. In the view I take of this case, it is unnecessary to decide that question. It is sufficient to say that the answer carefully denies all the allegations of fraud or misconduct. It admits the employment as attorney and solicitor to collect the claim, but avers that it was agreed that he was to have one-half of the claim as compensation, which Reeve should shortly assign to him, which he never did.

"Admits that he (Sutherland) acted as Reeve's attorney from February, 1874, until May, 1875, and alleges that he has never since represented Reeve, or claimed to represent him, in said litigation or about the prosecution of the claim.

"Admits the motion and order therein that the claim of Reeve be prosecuted for his benefit, and that no notice thereof was given said Reeve, and alleges notice unnecessary, as Reeve then had no interest in the claim, and he (Sutherland) was by purchase and assignment the owner thereof.

"Alleges Reeve had personal knowledge and notice of the order, in the said month of August, 1879, and charges *laches* by acquiescence from then until he filed this petition in 1889; also, that Reeve, shortly after entry of final decree of September 29, 1879, knew of same.

"Alleges that Reeve gave no attention to the claim from July, 1876, and was not represented by counsel, and had no need to be, as he had no ownership in the claim.

"That Reeve had no money, and paid none to his attorney. That defendant was continuously occupied during the year 1874, before the master, in the prosecution of the claim. That it became necessary for Reeve to raise money, and in order to do so he entered into an agreement in writing, dated October 12, 1874, with the McMullen Bros., by which he sold them an undivided 52½ per cent of said

claim (and of any decree to be obtained thereon), after de-
ducting all advances they might make Reeve. That they
advanced said Reeve about $7,000.

"That defendant did not know contents cf the McMullen
agreement until 1879. That the master in this cause, about
December, 1874, reported in favor of Reeve's claim to the
amount of $54,000; objections were filed, and a few months
thereafter Reeve, in fraud of defendant's and of the Mc-
Mullen's rights, attempted to sell said claim. Discovering
which, defendant filed a bill in equity in this court, to com-
pel Reeve to assign him a portion of said claim, as provided
by the retainer of said defendant. That Reeve became
angry, and thereafter refused to have any communication,
oral or written, with the defendant, and immediately dis-
charged defendant as his solicitor, and filed in the case a
written discharge to that effect. That because of said dis-
charge and the refusal of complainant to have any com-
munication with defendant, he (defendant), from and after
May, 1875, ceased to act as his solicitor, and has never
since so acted, or pretended so to act, or to represent said
Reeve or his interest therein. That with but one exception
Reeve has never since spoken to defendant, and has never
since been in his office, although said Reeve was in the City
of Chicago constantly up to and during the year 1878.
That since said month of May, 1875, Reeve neglected and
abandoned said claim, and refused to prosecute the same,
because he believed there was no prospect of success, and
gave no further attention to the same; and because he had
sold and assigned the said claim on 28th of July, 1876, for
value, to David A. Gage, the assignment providing that
Gage was to protect Reeve against the McMullen claim,
McDonald and Whitcomb, and the rights and claim of the
defendant, and against all costs. That about October 23,
1876, this court was about to proceed with the hearing of
the objections to the master's report, and the defendant
being notified thereof went to the court and stated that he

no longer represented Reeve, and suggested a continuance until he could notify Reeve or his friends. The hearing being continued, the defendant wrote to Gage, who he supposed could reach Reeve, stating the action of the court. That on the 25th of October, 1876, Gage came to defendant, said he had purchased Reeve's claim, exhibited the assignment thereof, and offered to assign the defendant one-half of the claim in payment of his services in and about the prosecution of the claim, which offer defendant accepted. That thereupon, by authority of said assignment to him (said Gage), and in consideration of such services, Gage assigned defendant an undivided half interest of the claim. That about two weeks after the assignment, defendant met Reeve on the street, told him he had seen the assignment, and that Gage had assigned him one-half of the claim. That Reeve replied, he did not care what Gage did, he was going for the telegraph lines. That thereafter Reeve paid no attention to said claim, nor did he thereafter communicate with said Sutherland. That defendant, on May 31, 1879, purchased for value from the said McMullen Brothers all their title and interests in the claim; and obtained for value an assignment of the agreement between them and Reeve; also that defendant purchased and owned the claim of McDonald & Whitcomb against Reeve.

"Alleges that by the purchase from Gage in 1876 of an undivided half, and of the McMullen interest in May, 1879, he became the owner of all said claim.

"Defendant alleges that September, 1878, Gage was adjudged a bankrupt, and one Mason B. Carpenter was appointed assignee, and that Gage conveyed to him all his property, including the interest in this claim. That on August 1, 1879, Carpenter, assignee, in pursuance of petition filed, and orders thereon, of the United States District Court at Denver, Colorado, sold, and he (defendant) purchased, for a valuable consideration, all the interest of said Reeve in said claim, and received from said assignee a deed of assignment

thereof. That Gage well knew of the bankruptcy proceedings, and acquiesced, advised and consented thereto. That on the 9th of August, 1879, defendant mailed a letter to Reeve, duly registered, which Reeve refused to receive. That on or about the 12th of August, 1879, he caused to be served on said Reeve a copy of said letter by the sheriff, at Cuyahoga Falls, Ohio. That although Reeve knew by said copy that defendant was asserting ownership of said claim, based largely, if not entirely, on said assignment to Gage, he never made any protest or objection, or communicated with defendant concerning the same. That, believing himself to be the owner, he spent much money and labor in the prosecution of the claim, and finally succeeded in obtaining a decree allowing the same, the same to be paid to him, said defendant. That since July, 1876, both Gage and Reeve considered the claim as of but little, if of any value, until within a year past. That practically all of the value has resulted from defendant's labors and services. The doctrine of *laches* is invoked and relied upon as a complete defense. An amendment to the answer sets up the statute of limitations of five years as a bar, and alleges that Reeve was not the owner of the claim, that assignment of parts thereof has been made to his son and other persons, and that defendant has assigned an interest in the claim to other persons, but to whom, does not state.

"I have stated the proceedings at length, for the reason that I have arrived at the conclusion that except for two disputed facts this case might be decided upon petition and sworn answer. Those two facts are, first, whether or not, after May, 1875, the defendant was or acted as the solicitor of Reeve in the prosecution of this claim; and, second, did Reeve make the assignment, in 1876, of this claim in question, to Gage in trust, and for the purposes alleged in the petition?

"I desire to say as little as possible in deciding this case. It is always a disagreeable duty for a court to pass upon

any question in which a solicitor of the court appears to be involved professionally; and I know also that a solicitor's reputation responds more sensitively to attack than any other, except possibly a woman's. I shall take up the question, first, of Reeve's assignment to Gage.

"I find from the evidence that the assignment to Gage was without consideration, was in trust, and for the purposes alleged in the petition. The defendant claims title through Gage, except as to one undivided 52½ per cent thereof, to which he claims an independent title by purchase from McMullen Bros. The McMullen claim was purchased by him after the assignment by Reeve to Gage, and before the purchase by defendant from Gage's assignee in bankruptcy. If the defendant was not Reeve's solicitor he was certainly Gage's. If defendant, while acting as Reeve's solicitor, derived knowledge of the McMullen claim, and neither Reeve nor Gage had notice of the purchase of McMullen's interest by defendant, until after it was purchased, which the evidence shows to be the fact, it needs no citation of authority to show that a solicitor can not secretly purchase the subject-matter in litigation, or any interest therein, and hold it adversely to his client. It was a voidable purchase either as to Gage or as to Reeve. Weeks on Attorneys, 465 and 222; *Gibbons* v. *Hoag*, 95 Ill. 45.

"If he does so purchase he will be held to be a trustee for his client as to the property or interest so purchased. The purchase of the subject-matter of litigations is forbidden as against public policy, and because it places the solicitor under temptation to be unfaithful to his trust. There was a *quasi* lien of one McDonald & Whitcomb purchased by defendant. What has been said of the McMullen purchase will equally well apply to that purchase. If defendant's title through the McMullen Bros. and the McDonald & Whitcomb purchase was not good as against Gage, it could not be good against Reeve, as I have found

Gage held only in trust for Reeve. In a court of equity, a *cestui que use* may avail himself of all the defenses of which the trustee could.

"This brings me to the consideration of defendant's claim of title derived from or through Gage. He claims to have received an assignment of an undivided half from Gage in 1876, and of all Gage's title remaining in him by deed of the assignee in bankruptcy in 1879. The petition alleges a transfer to Sutherland of the assignment made to Gage; that this took place in 1879, at Denver. The defendant denies this, but admits he did obtain, by Gage's consent, from Gage's assignee in bankruptcy, an assignment of all of Gage's interest. I am of the opinion, from the evidence, that Gage did assign the original assignment from Reeve to him over to Sutherland at that time. But whether Sutherland thus acquired Gage's title, or whether he acquired it through the deed or transfer of the assignee in bankruptcy, is immaterial. In either case he could only acquire such interest as Gage had, or, in other words, in either event he took subject to all the equities between Gage and Reeve.

"The defendant bases his claim of title upon the agreement of the McMullens and the assignment of Gage, and claims that he had a right to buy such titles as those instruments purported to convey. In other words, he claims to be a *bona fide* purchaser for value, without notice of equities, from both McMullen Bros. and Gage's assignee in bankruptcy. The defendant is mistaken in his law. There is no place for the doctrine of *bona fide* purchase for value without notice, in the transfer of such a *chose* in action. Not only does any purchaser of a *chose* in action of this character take it subject to all equities of the original parties to the chose in action, but a second or subsequent assignee takes it subject to all equities existing between any prior assignor and assignee. The doctrine is clearly enunciated in Pomeroy's Equity Jurisprudence, sections 703, 704, 707, 708, 709, 710, 711, 718 and note. Independent of the fore-

going, and without regard to the question as to alleged frauds and misrepresentations, I could not, upon the evidence, sustain the purchase from Gage at Denver, in 1879. It appears from Sutherland's own testimony that Gage, when he made his assignment, did not schedule this claim; that when Sutherland arrived at Denver and ascertained this fact, he, after some negotiations with Gage, got Gage's and the assignee's consent to file a petition for the sale of this claim, stating the fact that it was omitted, because it was considered as of little or no value; that such a petition was filed and the necessary proceedings were taken therein and Sutherland was declared to be the purchaser for the sum of ten dollars. Gage and the assignee swore that it was omitted from the first schedule, because he told the assignee that it was a matter that did not belong to him; that he held it in trust, and they both swore that they told Sutherland the same thing, or rather that Mr. Gage told Sutherland the same thing.

"According to defendant's own evidence, in order to induce Gage to sell or consent to a sale of his interest, he insisted to Gage that, having purchased McMullen's $52\frac{1}{2}$ per cent interest, and having a contract with him for one-half of claim for services as attorney, he, Sutherland, in fact owned the whole claim. He used this purchase from McMullens as a club to induce Gage to consent to a sale of his interest in the claim for the nominal sum of $10.00, when it was his duty to advise Gage that the law made him a trustee of the McMullen agreement for the benefit of the owner of the claim, and also to advise Gage of the liability of the stockholders and the real value of the claim. Concealment under such circumstances will vitiate a transaction as much as misrepresentation or actual fraud.

"The defendant sets up as a defense the statute of limitations in bringing this suit, and of *laches.*

"It appears, that in 1875 the complainant and defendant quarreled; they quarreled because Sutherland demanded of

him an assignment of the one-half interest, according to his understanding of the original agreement, and defendant filed a bill against the complainant to establish a lien for his fees. Complainant, June, 1875, filed in the Circuit Court a written discharge of defendant from the case. This discharge came to defendant's notice within a day or two. He still continued to appear and act as petitioner's solicitor, and is the solicitor of record to this date. Defendant relies on the discharge filed as absolving him from the relation of solicitor to Reeve; he gives his reasons for continuing to appear of record, which were, first, that after he was discharged by the filing of the written discharge, he desired to protect his own interest in the claim, and having his bill pending for the establishment of his lien, he continued to act until that was dismissed, and that he did not act from that time up to the employment by Mr. Gage in 1876, and that from 1876 on until his purchase from Mr. Gage, in 1879, he acted for Gage, and after 1879 for himself; although it being a *chose* in action, Reeve being a defendant, he allowed the record to stand as the claim of Reeve, and contented himself with obtaining the order of August 7, 1879, that the claim be prosecuted in Reeve's name, for his own benefit.

"The defendant sets up as a defense the statute of limitations of five years, and the equitable defense of *laches* in bringing this suit. It is sufficient to say, that this is an attack upon a decree or order of this court, obtained without notice to the petitioner, and under circumstances which it is alleged amounted to a fraud. A judgment obtained by fraud is not only a fraud upon the party, but upon the court. The statute of limitations, in cases of this nature, is applied in equity only by analogy to the limitations at law, and a court of equity will not apply the law statute where it would be inequitable to do so. The proceeding or suit in which the order and decree, interlocutory in their nature, was obtained, is still pending, and the obtaining of

the same, without notice to Reeve, was an imposition on the court. The defense of the statute of limitations has no standing in this case for that reason, as well as for the reason that Sutherland holds whatever title he obtained from Gage upon the same trusts that Gage held it.

"The equitable defense of *laches* is insisted upon. It is insisted that in August, 1879, Sutherland caused a notice to be served upon Reeve that he had become the exclusive owner by purchase, sale and assignment of the whole of his claim; which claim was in the year 1876 wholly sold, assigned and transferred and set over to David A. Gage, and that he, Sutherland, had obtained an order to prosecute the accounting then being carried on in court and that said claim be prosecuted for his, Sutherland's, benefit. It might well be asked, if in 1876, as Sutherland alleges, he believed Gage to be the absolute owner of said claim, and if he had no notice that Gage held as trustee for Reeve at the time of the purchase of Gage or his assignee at Denver, in 1879, why did he deem it necessary to give any such notice to Reeve?

"The defendant Reeve denies the receipt of any such notice, or even knowledge of the matters contained therein, until May, 1888. There is some evidence that he had notice in 1882, of some kind, as to an assignment by Gage, but I will refer to that hereafter.

"The evidence is very conflicting as to the service of the notice in 1879, and I do not deem it necessary to decide whether such notice was served or not.

"The defense of *laches*, by reason of lapse of time and inaction of the party seeking relief, will not be permitted where the party was in ignorance of the material facts connected with the transaction which is attacked, or of his rights in relation thereto. If the notice was intended to be a basis for the commencement of the running of time upon which the doctrine of *laches* is based, he should have notified Reeve of the purchase of the McMullen and of the McDonald and Whitcomb claims, of the manner in which

such purchases were wrongfully used to induce Gage to consent to the purchase by Sutherland, made in Denver, of his interest in the Reeve claim, and to give his guaranty concerning the same in 1879 (the consideration for the Reeve claim being ten dollars), and that it was represented by Sutherland that the Gage interest was absolutely of no value. The notice should have also disclosed the fact that in Sutherland's judgment the claim was of great value, because of the liability of the stockholders of the Great Western Telegraph Company.

"The petitioner Reeve alleges as a reason for his delay and apparent neglect of the claim that he never knew until 1888 that there was any liability to the full amount of the stock on the part of the stockholders of the Great Western Telegraph Company, and that Sutherland never advised him to that effect, but studiously concealed from him that there was such a liability. Reeve alleges also as excuse for his inaction and apparent abandonment of interest in the case, that he rested quiet, because he believed Sutherland, under his retainer to be paid out of the proceeds, would collect the claim; that he knew he was trying to do so, and that Sutherland led him to believe that the only money that could be realized would be from the tangible property and from some unpaid portion of the 30 per cent for which the stock was sold. Also that, hearing that the tangible property was sold for fifteen thousand dollars, he supposed the claim of but very little value after payment of costs and Sutherland's fees. The evidence sustains, in my opinion, this contention of Reeve. I have looked over the evidence carefully to see if Sutherland, when on the stand, swore that he did give either Reeve or Gage his opinion: that this liability of stockholders for the full amount of their stock existed, and I find no evidence of his to that effect. Nor will the answer under oath avail the defendant in this regard. The answer, while being particular to deny, as to almost all matters, the allegations of the bill by repeating

and denying the same, word for word, does not, at least in this particular, meet the requirements of an answer under oath. This bill demanded a direct affirmance or denial as to whether he did give Reeve an opinion and information as to the liability of the stockholders. I do not mean a demand in words, but the spirit of the charge necessitated such an answer on that point, if it was to be used as a defense requiring the evidence of two witnesses, or of one with corroborative circumstances to overcome it. The denial is, that he never withheld from Reeve *any facts* touching the liability of the stockholders. He might have given all the facts to Reeve, and Reeve still be as ignorant as before as to such liability. Reeve's delay, inaction, and failure to communicate with Sutherland, or to take any particular interest in the prosecution of the claim, may be accounted for, if he thought the claim of little, and probably of no value after the payment of solicitor's fees, and costs, when it might not be reasonable conduct in one who knew, or had been advised, of the stockholders' liability, and that with proper effort the whole of the claim allowed in 1879, for over $154,000, might be collected with interest. An abandonment of a claim of such a large amount, to one who had paid almost nothing for it, an acquiescence that Sutherland should have and retain a claim of such magnitude— all the facts being known to him, Reeve—and knowing his rights in the premises, would hardly seem consistent with the sanity of the petitioner.

"The only remaining question in this case is as to defendant's rights to an undivided half of this claim, by virtue of an assignment made in 1876 by David A. Gage, very soon after he received the assignment from Reeve. The consideration was the services theretofore rendered in the prosecution of this claim, and to be thereafter rendered.

"I find myself embarrassed by the pleadings in this case. The petition does not attack this assignment, although it was distinctly set up and relied upon in the answer as hav-

ing been made under the authority conferred by the assignment to Gage.   Under the pleadings in this case I am only authorized to inquire whether it was made by Gage, and did he have the authority to make it.   I am not authorized to inquire whether it was obtained by undue influence, by fraud, or even whether the fee is an extortionate one, for the reason that no such attack is made on it by the petition. If petitioner wished to attack it upon any of these grounds, he should have amended his petition.   He did ask leave to do so on the hearing, but, it appearing that Gage was dead, such leave was refused.   Agreements of this nature between attorneys and clients have been sustained by our Supreme Court when fairly made, and under proper conditions. Gage's signature being to the assignment, the only question is, had Gage power to make the agreement to give one-half for Sutherland's services rendered, and to be rendered. The assignment to Gage is absolute on its face, and in express words gave Gage power 'to litigate or adjust the claim as he saw fit.'

"In the absence of any attack on Gage or Sutherland as to the fairness of the transaction, and as it is not forbidden by our law that such a contract be made between solicitor and client, I can only inquire as to the fact of making the same, and Gage's right to make it.   The assignment to Gage gives a broad power and control to Gage over the claim and over the litigation of it, and I am of the opinion that it was sufficient authority to Gage to make the agreement with Sutherland.

"Reeve was in Chicago for about two years thereafter, and I am inclined to the opinion, from the evidence, that he knew Gage had made this arrangement.   There is evidence tending to show that about two weeks after it was made Sutherland met Reeve on the street, and some words passed, either as to Gage having assigned, or as to his being willing to assign, one-half interest to Sutherland.

"As Gage was then in Chicago, it would have been only natural that Reeve should then have inquired of the matter. There is also an undisputed letter of Reeve's to Culver in 1882, which refers to the fact that Gage had made an assignment. This might be equally applicable to the assignment of the one-half in 1876 as to that made in 1879. What Culver affirms that Reeve told him at that time is explicitly denied by Reeve.

"The defendant has spent considerable money and years of professional labor in prosecuting this claim, relying certainly for a number of years on the assignment of 1876.

"Upon the pleadings, and also upon the evidence, I sustain defendant's title to the undivided half under the agreement (or assignment) of 1876.

"I have disposed of this case, without feeling called upon to decide whether, after June, 1875, Mr. Sutherland was Reeve's solicitor. I shall only say that Mr. Sutherland appeared continuously from that date, and even now appears of record as solicitor for Reeve. He, however, contends that from the date of Reeve filing his discharge in court, June, 1875, until October, 1876, when Gage made the assignment of one-half of the claim, he only appeared to protect his own interest, and after October, 1876, to his last purchase in 1879, he appeared in the interest of Gage, and since then in his own interest. This contention may be true, and I am not prepared to say on the evidence, and certainly not desirous to hold, that Mr. Sutherland intended, after June, 1875, to act for and on behalf of Selah Reeve as his solicitor, or supposed he was guilty of any unprofessional conduct towards him.

"The mistake he has made has been in endeavoring, while connected with the prosecution of the claim, to acquire the ownership of the subject-matter of litigation, and in supposing that he could occupy the position of a *bona fide* purchaser without notice of a *chose* in action of this character.

"There must be an accounting as to what moneys have been paid by Sutherland to the McMullens, to McDonald & Whitcomb, and to the assignee in bankruptcy of Gage, for their respective interests or liens, and for the expenses and costs of the prosecution of the Reeve claim, also of the moneys received by Sutherland on behalf of said claim. The decree may provide for setting aside the order, and so much of the decree as finds and decrees that Sutherland is the owner of the claim, and that it be prosecuted for his benefit; and that the court, upon the issues herein, finds and decrees that Sutherland is entitled to the undivided half, and has an interest in said claim only to the extent, and upon the terms and conditions of the assignment of Gage to him in May or October, 1876. That the petitioner, Selah Reeve, is entitled to the remainder of said claim and proceeds thereof, and that a reference be had to a master to take such accounting, and the question of costs and all other matters be reserved until the coming in of the master's report, and for further directions."

A decree was accordingly entered, and Sutherland appealed to the Appellate Court, where the decree was affirmed. That court, after setting out the foregoing opinion, filed the following:

"Upon a careful consideration of the arguments contained in the briefs of counsel, and a thorough and painstaking examination of the record, we have reached the conclusion that the issues made by the pleadings, the findings from the evidence, and the legal principles governing the rights of the parties, are correctly stated in the foregoing opinion. Assuming that appellant's contention that the case was improperly consolidated with what is known as the *Terwilliger case*, is true, such order in no way injured appellant. The case proceeded to decree, as an independent suit,

26—151 ILL.

and the order of consolidation had no effect whatever on the result.

"The case turns principally, and almost wholly, on the relation which appellant sustained to Reeve or the Reeve interest on the records of the court.

"We affirm the decree of the court below; not on the ground that appellant committed any actual fraud, or intentioned wrong in procuring an interest in the subject-matter of the litigation, which was adverse to Reeve. Appellant regarded his relations with Reeve as in fact severed, and that he owed him no further duty, and the facts were cogent to justify such a moral conclusion on his part. He was mistaken, however, as to the legal consequence of his never formally changing the relation by which he was connected with Reeve upon the record. He in legal effect declined to be discharged as Reeve's solicitor, but persisted in holding the place which he originally obtained in the suit by Reeve's employment and with Reeve's consent.

"He continued from beginning to end to be Reeve's solicitor on the record, and the evidence shows, though appellant may not in fact have known it, that the interest he was prosecuting was Reeve's interest.

"*Decree affirmed.*"

PER CURIAM:

The record in this cause has been submitted to a careful consideration and analysis, and we have arrived at the conclusion that the decree must be affirmed. A re-discussion of the case would be productive of no good, and we have deemed it sufficient to place our decision upon the grounds stated in the opinions of the Chancellor and Appellate Court. For the reasons therein stated the decree will be affirmed.

*Decree affirmed.*