JOHN P. ANDERSON

*v.*

.ALEXIS D. ANDERSON.

*Opinion filed February 17, 1899.*

1. FRAUD—*a county court's judgment may be impeached in equity for fraud.* A judgment of the county court, on final settlement between an executor and beneficiary or guardian and ward, may be impeached in equity for fraud.

2. SAME—*what facts show intentional fraud by executor and guardian.* A judgment of the county court approving a guardian's report entered without objection from the ward may be impeached by the latter in equity, under a bill filed by him upon discovering that the guardian had credited himself, as executor of the estate of his ward's testator, with the payment of a legacy which he knew had been adeemed, which reduced the ward's estate to that extent.

*Anderson v. Anderson,* 77 Ill. App. 533, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. M. W. SHAEFER, Judge, presiding.

John Anderson, the father of appellant and appellee, died testate April 11, 1876. His will was duly admitted to probate. By the twelfth clause he gave to the heirs of his body by his wife, Margaret, all moneys and personal property remaining after the payment of all other legacies and bequests. Margaret had then two infant children by the testator—appellee and a daughter. The will provided that in case of the death of one of these children without issue the survivor should have the share of the deceased child. Some time after the death of the testator the daughter died, leaving appellee as the sole residuary legatee. The testator had by a former marriage adult children, for whom he provided, either by gifts executed in his lifetime or by provisions in his will. Two of these, the appellant and David L., he made executors. They both duly qualified, and gave separate mortgages upon their real estate as security for the faithful performance of their trust. David L. assumed the active management of the trust, but he died within two years, at which time appellant took sole charge. Appellant was also guardian for appellee during the latter years of his infancy, but appellee did not reside with appellant. By the eleventh clause of the will the testator had provided a legacy of $5000 to a son, R. W. Anderson.

David L. made one or two reports to the county court during his lifetime, and appellant made such reports from time to time thereafter. After appellee came of age he caused appellant to be cited by the county court to make final report and pay over the estate in his hands. Appellant appeared and presented a statement, which was not satisfactory, and the matter was left open for further investigation. Subsequently the statement was amended

178—11

by adding to the credit side thereof: "Legacy of R. W. Anderson paid soon after the death of testator but not credited in former reports, $5000." This statement was sworn to by appellant, and the clause of the will providing the legacy was produced and a credit for the amount demanded by appellant. This statement was accepted as true and correct by appellee and his attorneys and the item allowed to stand to the credit of appellant without further investigation. An order approving the account was prepared, the balance appearing to be due paid over, a receipt therefor executed, the account "O. K."d by the attorneys, and the order entered without contention before the court. This occurred August 15, 1893. On May 20, 1897, R. W. Anderson, having learned that appellant had taken credit for this $5000 in his settlement with appellee, claimed he had not received it from the executors, as he in fact had not, and cited appellant to show cause why he should not pay it to him. In answer to this citation appellant set up an ademption of this bequest by the testator in his lifetime. Upon the trial of this issue, June 7, 1897, appellant produced a receipt, dated August 16, 1875, after the will was made and shortly before the testator died, signed by R. W. Anderson, to the testator, for $14,143, covering certain advancements and also this $5000 bequest, and appellant testified that this receipt was with the testator's papers; that David had it until he died; that he had had it ever since David's death; that he had been the only executor since David died, for about sixteen years; that he was with the testator a day or two before he died, and that the testator told him that he had settled with all his grown children except himself and David; that R. W. had never made any claim until recently, and that he had never known till that time that he pretended to have a claim against the estate on account of that legacy. The court held that the proof sustained the defense, and dismissed the citation at cost of

R. W. Anderson, the complainant. No appeal was taken from the judgment and it remains in full force.

About this time appellee first heard of the fact that this legacy was not a proper charge against the estate, and had not in fact been paid by the executors "soon after the death of testator" or at any other time. On the 18th day of June, 1895, appellee filed the bill in this case against appellant, setting up the facts, charging, in effect, deception, fraud and mistake, and praying that the settlement made and approved in the county court be set aside, that the account be re-stated and the correct amount due ascertained, and for payment to him of the sum of $5000, with interest thereon. To this bill appellant made answer, in effect denying all deception, fraud and mistake; denying that the legacy provided to be paid to R. W. Anderson was in fact adempted and discharged by the testator in his lifetime, and setting up *laches*, and that the proceedings in the county court upon said account, and the order entered thereon, are a complete and effectual bar to this proceeding. The hearing resulted in a decree in favor of appellee for the sum of $6071.20. To reverse this decree appellant appealed to the Appellate Court for the Fourth District, where the decree of the circuit court was affirmed. To reverse the judgment of the Appellate Court appellant brings the case to this court.

HADLEY & BURTON, for appellant.

JAMES R. KINEALY, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Did the court err in affirming the decree setting aside the settlement made between appellant and appellee in the county court of Madison county, August 15, 1893? It is contended by appellant that the order entered by the county court is a bar to this proceeding, while appellee contends that the judgment of the county court is im-

peachable for fraud in equity. In 1 Story's Eq. Jur. sec. 187, it is said: "Fraud, in the sense of a court of equity, properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another; and courts of equity will not only interfere, in cases of fraud, to set aside acts done, but they will also, if acts have by fraud been prevented from being done by the parties, interfere and treat the case exactly as if the acts had been done." In *Nelson* v. *Rockwell,* 14 Ill. 375, this court said: "Fraud is one of the broadest grounds of equity recognized by the courts, and relief may be obtained against a judgment at law although the party might find a remedy in the court of law. It is the fraud which gives jurisdiction to this court, and the aggrieved party is not obliged to resort to another tribunal possessed of less power and appliances to ascertain the truth and grant the requisite remedy, although the other tribunal may have jurisdiction,"—citing Hare & Wallace's notes to 2 Leading Cases in Equity, (47 Law Library, 208,) wherein it is held that "a fraudulent judgment is void in equity, as it regards the party defrauded, and cannot therefore preclude the exercise of equitable jurisdiction." While it is true that the county court is a court of record and the same presumptions apply to its judgments as other courts of record, it is also true that a judgment of the county court in a settlement between an executor and trustee and a *cestui que trust,* or between a guardian and ward, may be impeached for fraud in a court of equity, in a proper case.

The next inquiry is whether the representations made by appellant to appellee at the time of the settlement in the county court, that the executors had paid a legacy of $5000 to R. W. Anderson and that appellant was entitled to a credit for that amount in his report, are true or false.

An examination of the evidence in the record shows that appellee was an infant four years old at the time of his father's death. The will appointed David L. and John P. Anderson, half brothers of appellee, executors of the estate of John Anderson, appellee's father. Appellant was also guardian of appellee. When appellee reached his majority and the time had come for a final settlement between appellant and appellee, and appellant was required to account, appellee discovered a discrepancy of $7000 and interest, according to appellant's reports, which appellee insisted should be paid or explained. Time was given appellant to investigate to see whether the discrepancy could be explained. After a delay of several weeks appellant and appellee went to Edwardsville, and in the presence of appellant's counsel appellant admitted this discrepancy in his account, but claimed that he had found an error,—that a legacy of $5000, given by the eleventh clause of the will to R. W. Anderson, had been paid by the executors but they had never taken credit for it in any of the reports made and filed in the county court. The will was produced and the eleventh clause read, showing that R. W. Anderson was given a legacy of $5000. An examination of the reports made at the same time seemed to verify the representation made by appellant that the executors had never taken credit for the $5000 which appellant claimed they had paid. The credit was then entered by appellant in the report, on the credit side, in these words: "Legacy of R. W. Anderson paid soon after death of testator but not credited in former reports, $5000." The discrepancy which appellee found was bonds of Madison county, amounting to $7000, that had never been charged in any of the previous accounts, which being added made the total amount in appellant's hands, as executor, $18,852.04. The record shows, that from this sum $10,000 was taken, the executor being required to pay Margaret Young the interest on this amount during her life, leaving in the hands of the

executor and trustee for appellee $8852.04. Before the $7000 was added, the balance, according to the report, was $11,852.04. This was discovered by appellee, and after its discovery, and after the fund of $10,000 was set aside for Mrs. Young, the balance found to be due appellee was $8852.04. Appellee allowed the sum of $852.04 to be deducted for his contribution to the trustee for managing the interest of Mrs. Young in the estate. The appellee, relying on the representations of the appellant, who had been his guardian so many years, that the executors had paid this $5000 to R. W. Anderson, accepted $8000 as the amount due him and gave his receipt therefor. The evidence shows that appellant was not entitled to the credit of $5000. It shows he falsely represented the executors had paid the legacy to R. W. Anderson "soon after the death of the testator" and took credit for that amount when he settled with his *cestui que trust.* The report was sworn to. The order was made and the receipt given by appellee August 15, 1893. Afterwards R. W. Anderson found out about the credit taken by appellant, and May 20, 1897, filed his petition for a citation to show cause why he should not be paid the $5000 legacy given him by the terms of the will. Appellee for more than three years had remained in ignorance of the fraud perpetrated upon him in the settlement, until he learned from R. W. Anderson that the executors had not paid him the $5000 for which appellant took credit in his report at the time of the settlement with appellee. On the hearing of the citation appellant produced the receipt of R. W. Anderson to the testator in his lifetime, and testified that this receipt was with his father's (the testator's) papers; that David, his co-executor, had it until he died; that the other papers were given to appellant after his death; that he supposed it was in the handwriting of R. W. Anderson; that he had been the only executor since his death; that he did not know whether the $5000 had ever been paid; that he was with his father a day or two

before he died, and he told him that he had *settled with all his children* and gotten receipts from them; admitted that he, appellant, *did not pay it;* that he supposed it had been paid. In the settlement with his *cestui que trust* he took credit for the $5000, and represented that the executors had paid it to R. W. Anderson, and swore to his report containing this credit. R. W. Anderson testified David Anderson never paid it to him and that appellant did not pay it to him. He (R. W. Anderson) admitted he gave his father the receipt to cover this advancement and to cover his portion in his father's will.

From a careful examination of the evidence we can come to no other conclusion than that appellant perpetrated an intentional fraud on appellee, his *cestui que trust.* When appellant made the settlement with appellee, August 15, 1893, the receipt given by R. W. Anderson to his father, the testator, "in full as my portion, according to his will, to this date," was in appellant's possession, and had been for more than sixteen years. He knew he had not paid the $5000 as executor, and that his brother and co-executor, David L. Anderson, had not claimed to have paid it or taken credit for the $5000 in his reports up to the time of his death. This very receipt given his father he afterwards used to defeat R. W. Anderson when he had appellant cited before the county court asking to be paid this $5000 given him by the will.

Having come to this conclusion in relation to the facts in evidence, what is the law of the case as to setting aside the order of the county court approving appellant's report? Appellant concealed facts peculiarly within his knowledge, of which appellee and the county court could not know, and made false representations and statements which deprived appellee of $5000 which, under the will, belonged to appellee as part of his residuary estate. The relation of trust and confidence existed between appellant and appellee, and it was the duty of appellant to disclose the truth to appellee. In *Bruce* v. *Doolittle*, 81

Ill. 103, where a guardian failed to report certain moneys belonging to his ward and concealed the same, this court said (p. 105): "While the approval of the guardian's account by the court in 1851 was a judicial act, yet if the guardian had received moneys which he failed to account for, or charged himself with too small an amount, no reason is perceived why. the wards may not require the account to be correctly stated and the guardian properly charged,"—citing *Bond* v. *Lockwood*, 33 Ill. 212. In Perry on Trusts (sec. 924) the author says: "It is, however, his (trustee's) duty to inform the court fully of all material facts within his knowledge, for a decree procured by any concealment or other management would be opened and the trustee might be held responsible." And in section 923: "If a release is executed to a trustee by a *cestui que trust* just after coming of age, the courts will investigate the transaction and require evidence that the trustee took no advantage of his position and influence. A release by the *cestuis que trust* will not be binding unless the parties are made fully acquainted with their own rights and the nature and full extent of the liabilities of the trustee. Any concealment, misrepresentation or other fraudulent conduct will vitiate such a release." Under the facts in this case a fraud was practiced by appellant upon appellee of such a character as to authorize a court of equity to set aside the order of the county court.

We have considered the cross-errors urged by appellee, but under all the facts as they appear we are not inclined to disturb the judgment of the Appellate Court in regard to the mode adopted of computing interest on the $5000.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*