## Warren B. Wilson v. Equitable Trust Co., Trustee, et al.

98　　81
r200s　23

1. EQUITY OF REDEMPTION—*Owner of, Entitled to the Rents, etc.*—The owner of the equity of redemption, where the property is sold for the full amount of the mortgage debt, is entitled to the rents of the same during the period of redemption.

2. LACHES—*Application of the Doctrine in Equity.*—The doctrine of laches is not applied in equity where to do so would be inequitable.

3. LIMITATIONS—*Where the Statute Does Not Apply—Trustees.*—Where a trust company as receiver obtains possession of a fund in the capacity of a trustee, the statute of limitations does not apply, and such relation is not changed merely because the fund has been paid over to it in a different capacity.

4. SAME—*Exemption of Trustees.*—To exempt a trust from the bar of the statute of limitations it must be, first, a direct trust; second, it must be of the kind belonging exclusively to the jurisdiction of a court of equity; and third, the question must arise between the trustee and the *cestui que trust.*

5. RECEIVERS—*Capacity in Which They Hold Funds.*—Receivers, directors, and other managers of stock corporations and the like, are in a general sense trustees, or rather *quasi* trustees, in respect to the particular persons toward whom they stand in a fiduciary relation.

6. TRUSTEES—*Defense of the Statute of Limitations.*—So long as the duties of a trustee remain undischarged, he can not avail himself of the statute of limitations for a defense.

7. EQUITY—*When it Will Not Permit the Statute of Limitations to Be Pleaded.*—There are cases in which a court of equity will not permit the bar of the statute of limitations to be interposed against conscience, and it will administer a remedy within its jurisdiction and enforce the right for the prevention of fraud.

Bill for an Accounting.—Error to the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1901. Reversed. Opinion filed November 7, 1901.

**Statement by the Court.**—Plaintiff in error, Wilson, filed a bill against the defendant in error, the Trust Com-

pany, and others, seeking an accounting of certain moneys held by the company and obtained by the means hereinbelow stated. The company answered individually and as trustee of the estate of John D. Jennings, and set up certain matters also hereinafter stated.

Defendants to the bill, The Northwestern Safe & Trust Co., James M. Stebbins and Joseph B. Long, answered, admitting all the allegations of the bill, and prayed that a decree be rendered in favor of plaintiff in error, Wilson, in accordance with the prayer of his bill.

The cause was heard upon an agreed statement of facts stipulated by the respective parties to be true, which is in substance as follows:

January 21, 1889, Alphonso D. Baldwin owned certain real estate in Chicago, known as Nos. 274 and 276 Madison street; that at said date he made a trust deed of said property to Franklin Hatheway to secure a note for $55,000, due at five years, to John D. Jennings, which trust deed, among other things, provides in substance, viz.:

Whereas, Baldwin is indebted to Jennings on note for $55,000, and desires to secure the same, the property is conveyed to Franklin Hatheway, trustee (David M. Hillis, successor in trust); that in the event of a default, trustee shall have authority to take possession, collect and receive all rents, issues and profits thereof, file bill for foreclosure and take decree for sale of the property by said party of the second part as trustee, special commissioner or otherwise, under order of the court; and out of the proceeds pay costs, commissions for trustee, twenty per cent attorneys' fees, and the debt, rendering the overplus, if any, to party of the first part; and "pay any rents that may be collected after such sale and before the time of redemption expires to the purchaser or purchasers of said premises at such sale or sales;" that upon filing such bill for foreclosure, David M. Hillis (the successor in trust named in the trust deed) or any attorney may appear for mortgagors and consent to immediate decree and sale, "and to stipulate and agree that upon the entry of the decree confirming said sale, a writ of

possession may be issued by said court to put said party of the second part, his successor or person appointed by the court to execute this trust, in possession of said premises until the time of redemption expires;" that the said party of the second part, or person appointed by the court to execute this trust, may, in case of any such default or breach of covenant, take immediate possession of said premises, and collect the rents and profits as above provided until the time of redemption shall expire under any sale that may be made by virtue of this trust deed; and the said parties of the first part hereby expressly waive and release to the said party of the second part, his successor or person appointed by the court to execute this trust, all rights which they now have or may hereafter have under any law of this State to retain possession of said premises after any such default or breach of covenant as aforesaid, until the time for redemption expires.

June 28, 1889, Baldwin and wife made a second mortgage to Anna Ball for $6,000. February 5, 1889, Baldwin and wife conveyed to Ida F. Gregory, subject to two incumbrances aggregating $61,000. February 7, 1899, a deed of trust to Edward A. Saalfield to secure $1,120, was executed by Gregory, grantee of Baldwin. February 12, 1889, Gregory and husband conveyed to Williams, Crumpton and Rainey, subject to incumbrance of $62,120. A contract was made the same day between Crumpton, Williams and Rainey, grantees of Gregory, to pay liens on the property aggregating $4,000.

The property passed by *mesne* conveyances and vested in Andrew J. Park, March 25, 1889, subject to incumbrances aforesaid. Park and wife made a deed to James M. Stebbins, April 13, 1889, which was, though in form a deed, in fact a mortgage. Certain persons about this time made improvements on and were entitled to mechanics' liens on the mortgaged property.

February 12, 1890, a bill was filed in the Circuit Court by Franklin Hatheway, trustee, and The Jennings Trust Company, a corporation, to foreclose the trust deed from Baldwin to Hatheway.

The Trust Company was then trustee under the will of John D. Jennings, and, as such, owner of the note secured by the Hatheway trust deed. A large number of defendants were joined, Baldwin and wife and the junior mortgagees, and all lienholders, and all were brought in by appropriate process.

Park was served with process February 17, 1890.

Stubbs & Canahan, Edward Baggot, Shehan & Lonergan, C. R. Ricket and Northwestern Safe and Trust Company, junior lienholders, and Anna Ball, second mortgagee, filed answers and cross-bills. No other cross-bills were filed.

July 17, 1890, on motion of complainants, an order was entered in said cause, appointing The Jennings Trust Company receiver of the property in question, which contained the following provision, viz.:

" And it is further ordered that the said receiver, until the further order of this court, pay the net proceeds of the rents, issues and profits of the said premises to the holder of the second mortgage on said premises standing in the name of Anna Ball, defendant, provided that in case of foreclosure and sale of said premises, said net proceeds shall be paid to the holder of the certificate of sale."

November 24, 1890, a final decree was entered, which contained, among others, the following provisions, viz.: Finds $62,821.72 amount due the complainant, principal and interest, and $3,000 is reasonable solicitor's fee; that there is due Anna Ball $1,541, principal and interest, after deducting the amount paid her by receiver, as appears by receiver's report, and that $200 is reasonable fee for her solicitor; that various amounts are due the several defendants to whom anything is found due; that deed to Stebbins is only a mortgage, and fixes order of priority of several claims. It then decrees that the defendants, or some of them, pay to the complainant and the several other parties the several amounts due them respectively in ten days, and in default thereof that the premises be sold by a master, with the usual provisions of a foreclosure decree, and that deficiency decrees in favor of complainants, Anna Ball,

Edward Baggot, Sheehan & Lonergan, Stubbs & Canahan and Cyrus R. Rickert may be entered in case the proceeds of sale should be insufficient to pay them.

December 27, 1890, the master, Rogers, sold the property in pursuance of the terms of the decree, to Thomas A. Hall, for $72,751.06. Hall purchased on behalf of The Jennings Trust Company, trustee under the will of John D. Jennings, and subsequently assigned the certificate to said company.

January 21, 1891, the master filed report of sale and distribution, showing out of proceeds of sale the amounts found by the decree due to The Trust Company, Ball, Baggot, Stubbs & Canahan, Sheehan & Lonergan, C. R. Rickert and James Bolton, were paid in full, and after paying all costs and expenses, left $12.17 in hands of master, which was applied on Long's claim, leaving unpaid only the claims of Long, The Northwestern Safe and Trust Company, and Stebbins, which are still unpaid.

March 31, 1892, the master conveyed the property to The Jennings Trust Company. The company, as trustee under the will of John D. Jennings, immediately entered into possession of said property under the master's deed, and has ever since continued and now is in possession thereof.

April 4, 1892, The Jennings Trust Company, receiver, made final report of its acts and doings from the date of its appointment to the present time, which shows that it received from rents of said premises $5,837.20 prior to March 28, 1892, disbursed for taxes, necessary charges and expenses $1,842.15; and had paid over and indorsed upon the master's certificate of sale of said premises the sum of $3,995.05, and asked to be discharged as receiver. On the same day the court entered an order confirming said report, in substance as follows:

This cause coming on to be heard on final report of receiver, and "it appearing to the court that all the attorneys of record in said cause have been duly notified of the filing of said report and account, and of the application of said

receiver to be discharged as receiver herein, and it further appearing to the court that said final report and account is a true and just account of all the receipts and disbursements of said The Jennings Trust Company, receiver, and that the net balance in the receiver's hands, to wit, the sum of $3,995.05, has been paid over and indorsed upon the master's certificate of sale of the premises sold under foreclosure herein in accordance with the order of this court, and the court being fully advised in the premises, it is hereby ordered, adjudged and decreed that said receiver's final report and account be and the same is hereby approved and said receiver discharged."

The only notice given of the application to enter said order was to attorneys of record in the cause, representing the different parties in the cause, and that complainant's and receiver's solicitor would call up said report and move that the same be approved and said receiver discharged.

The solicitor for the complainants in said cause had knowledge at the time of the entry of said order of the conveyance from Park to Jennings, dated December 13, 1890, and hereafter referred to.

Said sum of $3,995.05, mentioned in said receiver's final report, being the balance in its hands as receiver in said cause, was turned over by it, " as receiver, to itself as trustee under the will of John D. Jennings, and was received by said defendant as trustee, and has ever since been and still is retained by it as part of said trust estate."

February 23, 1893, the name of Jennings Trust Company was changed to Equitable Trust Company and defendant is same corporation as said receiver.

December 13, 1890, after decree but before the master's sale, Park and wife conveyed the property to Samuel A. Jennings by warranty deed, subject to liens found in decree. Deed recorded December 16, 1890.

May 8, 1890, W. G. Rainey recovered judgment against Park for $391.24. Execution on this judgment was levied on the property June 17, 1890, and same was sold at sheriff's sale July 22, 1890, to Rainey, the certificate being recorded July 23, 1890.

February 12, 1891, Samuel A. Jennings and wife conveyed to present complainant by quit-claim.

April 15, 1891, complainant acquired said sheriff's certificate.

October 1, 1894, sheriff made deed to present complainant in said certificate.

July 27, 1896, Samuel A. Jennings made assignment to complainant of all rents due and to become due.

Before suit brought complainant demanded $3,995.05 and interest from defendant, and exhibited the several assignment and conveyances above.

The Equitable Trust Company, as trustee of estate of John D. Jennings, is an active trustee, having full title to and possession of all the assets of said estate, and authority under will of John D. Jennings, creating said trust to handle, manage, control and represent said estate.

It was also further agreed that all errors of pleading were waived; that if complainant is entitled to recover the sum of money claimed by him upon the facts set forth under any state of pleading, or in any form of action, a decree may be entered in his favor under the bill filed herein, and defendant shall have benefit of any defense it could have on said facts in any form of action or state of pleading, whether defense set up in answer or not.

No other evidence than the above agreed statement was introduced on the trial.

Warren B. Wilson, attorney *pro se.*

Defrees, Brace & Ritter, attorneys for defendants in error.

Mr. Presiding Justice Windes delivered the opinion of the court.

The first question presented for decision is as to whether Wilson, who was either the owner of the equity of redemption, or entitled to all the rights and interests of such owner by reason of the assignment of Samuel A. Jennings of date July 27, 1896, mentioned in the statement, during all the

time between December 27, 1890, and March 28, 1892, the period of redemption, was entitled to the fund in the hands of the Trust Company, and particularly specified in the statement, leaving out of consideration for the time being any question as to whether he should be debarred, as claimed by the Trust Company, by reason of a prior adjudication of his rights, by his laches or because of the statute of limitations.

It appears from the statement that the fund here in question, viz., $3,995.05, came into the hands of the Trust Company by virtue of the order of the Circuit Court appointing it receiver in the foreclosure case brought by it and Hatheway, the trustee, to foreclose the trust deed made by Baldwin to Hatheway, and conveying the premises to which Wilson or his grantor acquired title pending that foreclosure. The Trust Company was also the owner of the note secured by said trust deed, and was in fact the purchaser of the same property at the master's sale, though the bid thereat was made in the name of, and the certificate of the master issued to, Thomas A. Hall on behalf of The Trust Company as trustee under the will of John D. Jennings. Hall subsequently assigned the certificates to the company and the property was conveyed by the master to it as trustee under the will of John D. Jennings after the time for redemption had expired. The fund in question arose from the rents collected by the Trust Company as receiver, after the master's sale and during the period of redemption, and was the net proceeds of such rents, during that time, after deducting disbursements for taxes, neces-sary charges and expenses. The amount of this fund was paid over in February and March, 1892, by the Trust Company, as receiver, to itself as purchaser at the master's sale, and as trustee under the will of John D. Jennings. The company has ever since retained and still retains said money as a part of said trust estate, and claims the right to hold it by reason of the provision in the trust deed fore-closed, which requires that, in the event of a foreclosure, any rents that might be collected after the sale and before

the time of redemption should expire, should be paid to the purchaser of the premises sold; also because the order of the court appointing the receiver made it his duty to collect the rents of said realty and directed him, until the further order of the court, to pay the net proceeds of the rents, issues and profits of said premises, after the payment of a second mortgage to Anna Ball, to the holder of the certificate of sale; also because the Trust Company was the purchaser at said sale, and as such purchaser received said rents from itself as receiver, pursuant to the order of the court in that behalf, and because the action of the receiver in that regard had been approved by the court.

A similar question to the one here presented was very thoroughly and fully considered by this court, Mr. Justice Sears delivering the opinion, in the case of Carroll v. Haigh et al., 97 Ill. App. 576, in which we held that the owner of the equity of redemption was entitled to the rents of property sold on a foreclosure during the period of redemption, where the property sold for the full amount of the mortgage debt, as is the case here, notwithstanding a provision in the mortgage that the purchaser at the master's sale should be entitled to such rents during that period. No argument nor authority has been presented in the case at bar which seems to justify a change of the conclusion there reached.

But it is said that Wilson is here debarred of any relief, because his rights have been adjudicated in the foreclosure suit, he having acquired his title *pendente lite*, and is therefore bound by the adjudication in that case. However sound that contention may be, as a general rule, we are of opinion it can not be applied here. The first order relied upon is the order appointing the receiver, which is quoted in the statement. It does not purport to be an adjudication of the rights of any one, but is simply a direction to pay the rents to the holder of the certificate of sale. The next order relied upon is the order confirming the receiver's final report, also set out in full in the statement. The order does not purport to be an adjudication of the

right of any one to the fund in question, but only approves the acts of the receiver in paying over the fund in question in accordance with the previous order of the court to the holder of the master's certificate and discharging the receiver. We are at a loss to perceive how these orders constitute any adjudication that the Trust Company was entitled to the fund here in question.

It is next contended that Wilson is barred by his laches, not having filed his bill for more than eight years after the Trust Company, as trustee of the Jennings estate, received the fund in question. The doctrine of laches is not applied in equity when to do so would be inequitable. No notice was given by the Trust Company, either in its capacity of complainant, receiver, or purchaser in the foreclosure case, to the owner of the equity of redemption of the application to confirm the receiver's report, notwithstanding the fact that its solicitor at that time had knowledge that Samuel A. Jennings, the grantor of Wilson, had acquired the equity of redemption and was not a party to the cause; nor does it appear that Wilson or his grantor had any notice of said orders prior to the filing of the bill herein. Moreover, the rights of no innocent third person have intervened during the lapse of time since the receiver was discharged, and the money is still in the hands of the Trust Company. It can make no difference that the company holds the money in a different capacity. Under such circumstances it would certainly be highly inequitable to apply the doctrine of laches. Stiger v. Bent, 111 Ill. 330-41; Harris v. McIntyre, 118 Ill. 275-89; Sutherland v. Reeve, 151 Ill. 384-95; Coryell v. Klehm, 157 Ill. 462-73; Farwell v. Gt. Wes. Tel. Co., 161 Ill., 522-95 and cases cited.

In the Stiger case, *supra*, the court say :

" A court of equity applies the doctrine of laches in denial of relief prayed where the statutory period of limitations has not expired, only where, from all the circumstances in evidence, to grant the relief to which the complainant would otherwise be entitled will, presumptively, be inequitable and unjust, because of the delay to the defendants."

In the Harris case, *supra*, the court say :

" In cases, however, where there is no statute applicable, the time in which a party will be barred from relief in a court of equity must necessarily depend upon the peculiar circumstances of each case."

In the Farwell case, *supra*, it was held that the doctrine of laches does not apply in equity in cases of fraud, until the discovery of the fraud, or from the time when the fraud could have been discovered by the use of reasonable diligence.

In the Sutherland case, *supra*, the court, in speaking of when the statute of limitations would be applied in equity, said, " A court of equity will not apply the law statute where it would be inequitable to do so," and held, under the circumstances of that case, not only that the statute of five years did not apply, but also that laches did not apply, although there had been a lapse of a much longer time, because, under the circumstances, to apply that doctrine would have been inequitable.

The money still being in the hands of the Trust Company and the rights of no innocent third parties having intervened, it would certainly be unconscionable to permit the company, because of mere lapse of time, to retain money which it had received without any basis of consideration, and which rightfully and equitably belongs to Wilson, when the company can and will be fully protected in making payment to Wilson under a decree in equity.

It is further contended that Wilson is barred by the statute of limitations from any relief, but we think this contention is untenable, for two reasons: first, because the Trust Company, as receiver, obtained the fund in question in the capacity of a trustee, and that relation has not changed merely because the money was paid over to itself in a different capacity. The statute of limitations is not applicable to such a case—will not be allowed to be interposed as a defense by such a trustee as this Trust Company is shown to be. High on Receivers, Sec. 1; 2 Perry on Trusts, Sec. 82; Angell on Limitations, Secs. 166, 168, 174; 1 Pomeroy's Eq. Juris., Secs. 156, 157; King v. Goodwin, 130 Ill. 102–10;

Henry Co. v. Winnebago Swamp Drainage Co., 52 Ill. 299; Albretch v. Wolf, 58 Ill. 186–90; Farman v. Brooks, 9 Pick. 212; Houseal v. Gibbes, 1 Bailey (S. C.), Eq. 482.

In section 166, *supra*, of Angell, the author says :

" To exempt a trust from the bar of the statute, it must be, first, a direct trust; second, it must be of the kind belonging exclusively to the jurisdiction of a court of equity; and third, the question must arise between the trustee and *cestui que trust.*"

The statement of the author as to the rule is followed and confirmed by the Supreme Court of this State in the following cases : King v. Hamilton, 16 Ill. 190–5; Albretch v. Wolf, *supra;* Governor v. Woodworth, 63 Ill. 254–8; Hayward v. Gunn, 82 Ill. 385–9; People v. Oran, 121 Ill. 650–5.

That the trust here in question is a direct or express trust appears clear, though there seems to be no direct adjudication on the matter. In the section from High referred to above, the author says that a receiver holds the fund or property intrusted to his care for the benefit of whoever may finally establish title thereto. In the section from Perry on Trusts, *supra*, the author says that a trust, speaking of an express trust, may be proved by any subsequent acknowledgment by the trustee in writing, or " by any writing (of the trustee) in which the fiduciary relation between the parties and its terms can be clearly read."

In this record appears the report of the Trust Company in writing, signed by it, which shows it acquired the fund here in question as receiver. In that capacity it held the fund, as Mr. High says, for the benefit of whoever may establish title to it.

In section 168, *supra*, of Angell, the author says :

" The most common mode of creating direct trusts, not cognizable at law, is by the appointment and qualification of executors and administrators."

In King v. Goodwin, *supra*, the Supreme Court in speaking of a receiver on a creditor's bill, said :

" The receiver is a *quasi* trustee, holding the fund·for the benefit of whoever may establish title thereto."

In 1st Pomeroy's Eq. Juris., Sec. 156, the author says that there is included within express trusts, " the relation subsisting between executors and administrators on the one hand, and legatees, distributees and creditors on the other." The same author, in section 157, says that this equitable doctrine of trusts includes guardians of infants, committees or guardians of the insane, receivers, directors, and other managers of stock corporations and the like, and that such persons are in a general sense trustees, or rather *quasi* trustees in respect of the particular person toward whom they stand in a fiduciary relation.

In view of these authorities, we are of opinion that the Trust Company was not only a trustee for Wilson, but that the trust is express or direct.

The trust is of a kind exclusively within the jurisdiction of equity, for the reason that Wilson could not sue the receiver without the permission of the chancery court that appointed it. The question here arises between the trustee and the *cestui que trust*, and therefore the trust fulfills all the requisites, as laid down by the authorities, so as to relieve it from the bar of the statute.

It is also said in the Henry Co. case, *supra*, " There are cases in which a court of equity will not permit the bar of the statute to be interposed against conscience, and it will supply and administer a remedy within its jurisdiction and enforce the right for the prevention of a fraud." (Citing cases.) Also in the Albrecht case, *supra*, the court say : " The rule seems to be general and well settled by authority that so long as the duties of the trustee remain undischarged the trustee can not avail of the statute of limitations for his defense," and held in the case, which was an express trust under a will for the payment of certain debts, that the statute of limitations was not a defense, so long as the duties of the trustee had not been discharged and he had not repudiated the trust. The duties of the trust in the case at bar have not been discharged and the trustee did

not repudiate the trust imposed upon it before the filing of the bill.

2. It would be so far fraudulent as to be inequitable to allow the defense of the statute of limitations to be made against Wilson's claim. Henry County v. Winnebago D. Co., 52 Ill. 299; Long v. Thompson, 60 Ill. 27; Anderson v. Anderson, 178 Ill. 160–4; Johnson v. Waters, 111 U. S. 640–68; Arrowsmith v. Gleason, 129 U. S. 86–100; Sutherland v. Reeve, 151 Ill. 384.

In the Long case, *supra*, it was held that an order of distribution of the suplus in the hands of an administratrix directing one-third of such surplus to be paid to her without notice to the heirs, was void for want of such notice, and was set aside.

In the Arrowsmith case, *supra*, an order of a Probate Court to sell an infant's land, which was procured by fraud, was set aside in equity, though the proceeding appeared to have been regular in matter of form. The court say:

"The fact of being a party does not estop a person from obtaining in a court of equity relief against fraud. It is generally the parties that are the victims of fraud. * * * In such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it."

In the Anderson case, *supra*, the court quotes from Nelson v. Rockwell, 14 Ill. 375, the following:

"Fraud is one of the broadest grounds of equity recognized by the courts, and relief may be obtained against a judgment at law, although the party might find a remedy in a court of law;" and affirmed a decree which set aside a judgment of the County Court between a guardian and his ward on account of fraud, which consisted of a concealment by the guardian of certain facts within his knowledge, and which the ward did not know, and in making false representations. The court quotes from Perry on Trusts, as follows:

"It is, however, his (trustee's) duty to inform the court fully of all material facts within his knowledge, for a decree procured by any concealment or other management would be opened and the trustee might be held responsible."

In the Sutherland case, *supra*, the court, in speaking of a like defense of the statute of limitations, said :

"It is sufficient to say that this is an attack upon a decree or order of this court, obtained without notice to the petitioner and under circumstances which it is alleged amount to a fraud. A judgment obtained by fraud is not only a fraud upon the party, but upon the court. The statute of limitations, in cases of this nature, is applied in equity only by analogy to the limitations at law and a court of equity will not apply the law statute where it would be inequitable to do so."

In this case the failure of the Trust Company to give notice to the court, to Wilson or to his grantor, although its solicitor at the time the order of distribution was entered, knew that Wilson's grantor had acquired the equity of redemption, was, to say the least, such a fraud as would make it inequitable to allow the statute of limitations to be interposed as a defense.

Other matters urged by counsel, and not especially referred to herein, have been fully considered, but they are not, in our opinion, sufficient to modify the conclusions reached by us.

The decree of the Circuit Court dismissing the bill is reversed, and that court is directed to enter a decree in favor of the plaintiff in error for $3,995.05, together with interest thereon from April 4, 1892, at five per cent per annum, with annual rests thereafter on the fourth day of April each year.    Reversed.